UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHEN A. COX,

        Plaintiff,

v.                                Case No.  8:11-cv-02860-T-35AEP

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Stephen A. Cox seeks judicial review of the denial of his claim for a period of disability and Supplement Security Income ("SSI").  Because the Commissioner of Social Security's decision was based on substantial evidence and employed proper legal standards, the Court recommends that the decision be affirmed.

## I.

### 1.      Procedural Background

      Plaintiff filed an application for a period of disability and SSI on January 16, 2008, alleging a disability beginning on December 21, 2007.  (Tr. 111.)  The Commissioner denied Plaintiff's claims both initially and upon reconsideration.  (Tr. 58-61, 65-67.)  Plaintiff then requested an administrative hearing.  (Tr. 68-70.)  On May 27, 2010, the Administrative Law Judge ("ALJ") held a hearing at which Plaintiff appeared telephonically from Hamilton Correctional Institute and testified, and an impartial vocational expert ("VE") also appeared at

the hearing.  (Tr. 35-55.)  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits.  (Tr. 18-34.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 10-16.)  Plaintiff then timely filed a complaint with this Court, after being granted an extension of time to file a complaint.  (Dkt. No. 1; Tr. 1-9.)  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**2.      Factual Background and the ALJ's Decision**

Plaintiff, who was born on November 23, 1947, claims disability beginning on December 21, 2007. (Tr. 39, 111.)  Plaintiff has a high school education.  (Tr. 40.)  His past relevant work experience includes work as a painter, groundskeeper, cleanup worker, and peddler or solicitor. (Tr. 41-45, 50-51.)  Plaintiff alleges disability due to diabetes, neuropathy in the feet and legs, arthritis, stroke, vision, and congestive heart failure.  (Tr. 127.)

After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: diabetes mellitus, neuropathy, shortness of breath, hypertension, and arthritis.  (Tr. 23, Finding 2.)  The ALJ noted that Plaintiff also had a medically determinable mental impairment of anxiety disorder but determined that this was not a severe impairment. (Tr. 23.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 24, Finding 3.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform less than medium work.  (Tr. 25, Finding 4.)  Specifically and as part of Plaintiff's RFC, the ALJ

2

found that Plaintiff: can occasionally lift fifty pounds; can frequently lift twenty-five pounds; can stand or walk for six hours in an eight-hour workday; can sit for six hours in an eight-hour workday; must avoid ladders, unprotected heights, and heavy or moving machinery; requires the use of a mono cane; and is limited to unskilled or entry-level jobs. (Tr. 25, Finding 4.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and functionally limiting effects of his symptoms were inconsistent with the evidence of record and could not be fully credited. (Tr. 25-28.)

Considering Plaintiff's noted impairments and the assessment of the VE, however, the ALJ determined that Plaintiff could not perform his past relevant work as a painter but could perform his past relevant work as a landscape laborer, cleanup worker, and peddler or solicitor. (Tr. 28, Finding 5.) The VE testified that Plaintiff's past job as a painter is skilled, medium exertion. (Tr. 50.) The VE also testified that Plaintiff's past jobs as a landscape laborer and cleanup worker were heavy exertion, but light exertion as Plaintiff performed them. (Tr. 28.) Additionally, the VE testified that Plaintiff's past job as a peddler or solicitor was light exertion. (Tr. 28.) Alternatively, the ALJ found that Plaintiff could also perform other jobs existing in the national economy. (Tr. 29.) Because the ALJ found alternatively that Plaintiff nevertheless presented additional limitations, the ALJ relied on the VE's assessment to determine the extent to which these limitations eroded Plaintiff's ability to perform unskilled medium occupations. (Tr. 29.) Given Plaintiff's age, education, work experience, and RFC, the VE testified that

3

Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a linen room attendant, hospital food service worker, and bus person.   (Tr. 29-30.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled within the meaning of the Social Security Act.  (Tr. 30, Finding 6.)

## II.

In order to be entitled to SSI, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id*. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en*

4

*banc*), *cert. denied*, 544 U.S. 1035 (2005). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656, 656 (5th Cir. 1971).[1] Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Thus, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

_____

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

## III.

Plaintiff challenges the ALJ's Decision on five grounds:

(1)     The ALJ erred in determining Plaintiff's past relevant work;

(2)     The ALJ erred in not finding a severe impairment of renal failure;

(3)     The ALJ erred by not properly considering Plaintiff's pain and other symptoms;

(4)     The ALJ erred in evaluating medical opinions; and

(5)     The ALJ erred by failing to fully develop the record.

For the reasons discussed below, none of the contentions warrant reversal.

**A.     Whether the ALJ properly determined Plaintiff's past relevant work in finding Plaintiff not disabled.**

Plaintiff first argues that the ALJ erred by determining Plaintiff's past relevant work as a landscape laborer, cleanup worker, and peddler or solicitor.  (Dkt. No. 16, 11-15.)  Plaintiff asserts that the ALJ erred by considering Plaintiff's unsuccessful attempt at two and one-half months of work as a groundskeeper in the Ticket-to-Work program as past relevant work as a landscape laborer.  (Dkt. No. 16, 11-12.) Plaintiff also challenges the ALJ's finding that Plaintiff had past relevant work as a cleanup worker because Plaintiff picked up cigarette butts in the prison yard for five minutes each day with no pay.  (Dkt. No. 16, 13-14.)  Lastly, Plaintiff claims that the ALJ erred by finding that Plaintiff had past relevant work as a peddler or solicitor, to which he should return, because Plaintiff sold drugs illegally.  (Dkt. No. 16, 14-15.)  Notably, Plaintiff does not argue that the ALJ erred by finding that Plaintiff could perform other jobs that exist in significant numbers in the national economy.

At the fourth step of the sequential analysis, the ALJ must determine whether the claimant is capable of performing his past relevant work. The review at this step involves the assessment of a claimant's RFC and requires consideration of the physical and mental demands of his former work. In this regard, "the ALJ has the duty to fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant [himself] is capable of doing before he determines that [he] is able to perform [his] past relevant work." *Nimick v. Sec'y of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989) (alteration in original) (emphasis omitted); *see also Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986). However, at this step, the burden is still upon the plaintiff to prove that he cannot do this past work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986)).

Further, although VE testimony is not required in determining whether a claimant can perform his past relevant work, the Social Security Regulations provide that a VE "may be used in making this determination because such an expert 'may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.'" *Hennes v. Comm'r of Soc. Sec. Admin.*, 130 Fed. Appx. 343, 346 (11th Cir. 2005) (quoting 20 C.F.R. § 404.1560(b)(2)). Additionally, if it is found that a claimant cannot perform his past relevant work because of additional limitations, the ALJ can determine whether a claimant can perform other jobs through the testimony of a VE. *Jones v. Apfel*, 190 F.3d 1224,

1229 (11th Cir. 1999) (citing *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995)). "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones*, 190 F.3d at 1229 (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

To the extent that Plaintiff claims that the ALJ misclassified his former work as a landscape laborer, cleanup worker, and peddler or solicitor as past relevant work, this was harmless error and did not affect the ultimate disability determination. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (finding that an ALJ's mischaracterization of a plaintiff's past work was harmless error when the mistake did not affect the ultimate outcome of the disability determination). Even assuming *arguendo* that the ALJ erred by classifying those three jobs as past relevant work, the ALJ alternatively found, based on the VE's testimony, that Plaintiff could perform other work. (Tr. 29.) The VE testified that a hypothetical individual with Plaintiff's RFC could perform other work that exists in significant numbers in the national economy: a linen room attendant, hospital food service worker, and bus person. (Tr. 29, 51-54.) Plaintiff does not challenge this aspect of the ALJ's finding. Therefore, substantial evidence supports the ALJ's finding that Plaintiff could perform other work and therefore was not disabled under the Social Security Act. Accordingly, Plaintiff's first argument is without merit.

B.      **Whether the ALJ properly found that Plaintiff's renal failure was a non-severe impairment.**

Plaintiff's second contention is that the ALJ erred in finding Plaintiff's renal failure not severe.   (Dkt. No. 16, 15-16.)   For the reasons discussed below, Plaintiff's assertion is unconvincing.

At step two of the sequential analysis, a claimant must show that he suffers from an impairment or combination of impairments that significantly limits his physical and mental ability to do basic work activities for a consecutive twelve-month period, namely: walking; standing; sitting; pushing; reaching; seeing; hearing; speaking; understanding and carrying out of simple instructions; use of judgment; and responding appropriately in the workplace.  *See* 20 C.F.R. §§ 404.1520, 404.1521, 416.920, 416.921.  The finding of *any* severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy the requirements of step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *Lawson v. Astrue*, No. 5:09-cv-23-Oc-GRJ, 2009 WL 3617794, at *6 (M.D. Fla. Nov. 2, 2009); *see also Heatly v. Comm'r of Soc. Sec.,* 382 Fed. Appx. 823, 825 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").  A claimant's impairment will be considered non-severe only if it is a slight abnormality that has such a minimal effect on the claimant that it would not be expected to interfere with the claimant's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  The severity of a medically ascertained disability must be measured, therefore, "in terms of its effect upon ability to work,

and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

Plaintiff contends the ALJ erred by failing to find that Plaintiff had severe renal failure. (Dkt. No. 16, 15-16.)  In support of his allegation, Plaintiff cites to his own testimony regarding his chronic problems with his kidneys and high levels of creatinine as evidence of a severe impairment. (Dkt. No. 16, 15; Tr. 54.) However, Plaintiff fails to show how the creatinine levels due to his diabetes limited his ability to work more restrictively than what the ALJ found.  In determining Plaintiff's RFC, the ALJ considered Plaintiff's credible work limitations in restricting Plaintiff's work to less than medium exertion.  (Tr. 25-28.)  Of note, Plaintiff's creatinine level in 2008, during Plaintiff's claimed period of disability, was between 1.5 and 1.6, which is not significantly higher than the normal range.[2]  (Tr. 488.) Therefore, medical evidence of record shows that Plaintiff was not as restricted as he alleged, and the ALJ's finding is supported by substantial evidence.

In addition, Plaintiff claims the ALJ erred in not finding renal failure as a severe impairment by citing to a nephrologist's diagnosis indicating severe renal insufficiency and renal failure. (Dkt. No. 16, 16; Tr. 489-90.)  Plaintiff claims that his treating source[3] changed the renal insufficiency diagnosis to renal failure upon reviewing the nephrologist's diagnosis.[4]  (Dkt. No.

---

[2]The normal range for creatinine levels is 0.5 to 1.5.  (Tr. 342.)

[3]The Court notes that it was not Plaintiff's treating source, but a nurse practitioner that changed Plaintiff's diagnosis from renal insufficiency to renal failure.  (Tr. 492.)

[4]The Court points out that the report actually states that Plaintiff was "told he has renal failure", and not that the nurse practitioner made those findings independently.  (Tr. 492.)

10

16, 16; Tr. 492.)  However, the ALJ considered Plaintiff's diabetes and the effects of his diabetes (namely, kidney disease), and even though Plaintiff was diagnosed with renal insufficiency or failure, medical records indicate that Plaintiff's diabetes was insulin controlled and stable with medication.  (Tr. 26, 372-91, 396-403.)  Notably, in the same report that the nurse practitioner diagnosed Plaintiff with renal failure, the report also noted that Plaintiff was "feeling well" and had no complaints.  (Tr. 492.)  What's more, a diagnosis alone is not conclusive in finding a severe limitation on a claimant's ability to work.  *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).  Because other medical evidence suggests that Plaintiff's renal insufficiency or failure was not as severe as he alleged and the ALJ considered these limitations in formulating Plaintiff's RFC, his decision is supported by substantial evidence.

Moreover, the ALJ performed everything required of him in step two of his analysis.  In his decision, the ALJ found that Plaintiff had the following severe impairments:  diabetes mellitus, neuropathy, shortness of breath, hypertension, and arthritis.  (Tr. 23, Finding 2.)  Even assuming *arguendo* that the ALJ could have found that Plaintiff's renal insufficiency or failure constituted a severe impairment at step two, his failure to do so was harmless because the finding of *any* severe impairment is enough to meet the demands of step two.  *Jamison,* 814 F.2d at 588; *Heatly*, 382 Fed. Appx. at 824-25 ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Heatly had a severe impairment: and that finding is all that step two requires.").  Since the ALJ found that Plaintiff suffered from a severe impairment, he continued on in the sequential analysis and subsequently considered the purported limitations caused by Plaintiff's kidney disease in

11

determining Plaintiff's RFC.[5]  Accordingly, the ALJ applied the appropriate legal standard at step

two and did not err by finding Plaintiff's renal insufficiency or failure non-severe.  Thus,

Plaintiff's second argument is meritless.

>    **C.**    **Whether the ALJ properly considered Plaintiff's subjective complaints of pain and other symptoms.**

The Plaintiff next contends that the ALJ erred by failing to properly consider Plaintiff's

subjective complaints of pain and other symptoms.  (Dkt. No. 16, 17-18.)  Specifically, Plaintiff

asserts that the ALJ incorrectly found that Plaintiff's diabetes and hypertension were controlled

and his neuropathy was treated conservatively.  (Dkt. No. 16, 17.)  Further, Plaintiff alleges the

ALJ erred by finding that Plaintiff could perform a wide range of daily activities on a regular and

continuing basis.  (Dkt. No. 16, 18.)  For the foregoing reasons, Plaintiff's claims all lack merit.

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other

subjective complaints.  As the Court of Appeals explained in *Landry v. Heckler*, the pain standard

"require[s] evidence of an underlying medical condition and (1) objective medical evidence that

confirms the severity of the alleged pain arising from that condition, or (2) that the objectively

---

[5]According to Social Security Ruling 96-8p, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" 1996 WL 374184, at * 5 (July 2, 1996).  When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987); *see also McConnell v. Astrue*, No. 1:09-cv-00063-MP-WCS, 2009 WL 4405477, at *3 (N.D. Fla. Dec. 2, 2009) ("Even if there is error at step 2 . . . a remand is not needed if the error is harmless because the ALJ considered the limiting effects of the impairment at each succeeding step, along with other impairments.") (citations omitted).  As will be more fully discussed, the ALJ considered all of Plaintiff's impairments at the remaining steps of his analysis.  Therefore, the ALJ did not err, and any error the ALJ did commit at step two is harmless in this case.

determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." 782 F.2d 1551, 1553 (11th Cir. 1986); *see also* 20 C.F.R. § 404.1529(a) (statements about pain or other symptoms will not alone establish disability). This standard also applies to complaints of subjective conditions other than pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discounts Plaintiff's testimony concerning subjective complaints after finding a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms, he must "articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1561-62).[6] The reasons given for discrediting pain testimony must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992); *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

In the instant case, the ALJ properly applied the pain standard and found, after considering the evidence of record, that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms."[7] (Tr. 25.) However, the ALJ also determined that Plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms were not credible because they were inconsistent with the RFC

[6]This is the second step in a two-step process in considering a claimant's symptoms. *See* 20 C.F.R. § 404.1529(c) (evaluating the intensity and persistence of symptoms in light of all evidence to determine the capacity to work).

[7]Although the ALJ did not specifically state that Plaintiff met the threshold of the pain standard, it can be gleaned from the analysis of the ALJ's decision that the ALJ evaluated the credibility of the statements based on consideration of the record as a whole in step two. (Tr. 25-28.) Specifically, the ALJ found that Plaintiff had met step one by finding medically determinable impairments of diabetes mellitus, neuropathy, shortness of breath, hypertension, and arthritis. (Tr. 23, 25.)

13

and were not supported by objective medical evidence. (Tr. 25-28.)  As required by the Eleventh Circuit, the ALJ articulated "explicit and adequate reasons" for rejecting Plaintiff's pain allegations.  (Tr. 25-28.)  In fact, the ALJ highlighted several reasons for determining that Plaintiff's statements were not entirely credible, all of which were supported by the record.  (Tr. 28.)  For example, the ALJ noted that despite Plaintiff's complaints of diabetes mellitus and hypertension, Plaintiff's diabetes was insulin controlled and his hypertension was controlled with treatment and medications, as well.[8]  (Tr. 26-27.)  Similarly, Plaintiff's neuropathy was treated conservatively and medical records indicate that the neuropathy only presented some limitation. (Tr. 392-403, 418-425, 465-472.)  The ALJ also discussed that Plaintiff testified to cleaning his room, doing his own laundry, doing basic household chores, fishing, going to the grocery store, attending church, and while incarcerated, doing cleanup detail.  (Tr. 27.)  All of these notations suggest that Plaintiff's symptoms may not have been as limiting as Plaintiff alleged.

Plaintiff first argues that the ALJ was incorrect in stating that Plaintiff's diabetes was controlled because there is no evidence that Plaintiff's diabetes was controlled.  (Dkt. No. 16, 17.) This is simply incorrect.  The ALJ acknowledged Plaintiff's diabetes as a severe impairment (Tr. 23), however, also noted that on numerous occasions, Plaintiff's doctors noted that insulin was

---

[8]Further evidence that supports the ALJ's finding that Plaintiff's subjective complaints of pain were not as limiting as alleged is illustrated by the efficacy of Plaintiff's medication in managing his symptoms.  *See Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984); *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993); 20 C.F.R. §§ 404.1527(d)(4), 404.1529(c)(3)(iv).  In fact, Plaintiff regularly reported and Plaintiff's doctors noted that Plaintiff's medication was effective and his symptoms were controlled with the medications. (Tr. 372-391, 396-403, 438-447, 491-500.)  Therefore, the record is replete with evidence that Plaintiff's complaints regarding his diabetes and hypertension symptoms were not as severe as alleged.

controlling Plaintiff's diabetes symptoms (Tr. 26-28).   For example, on February 21, 2008,

Plaintiff reported feeling "good" (Tr. 376), and as recently as January 21, 2009, reported feeling

"well" and had no complaints (Tr. 492).   Moreover, Plaintiff's own primary care physician, Dr.

Kuhn, indicated that Plaintiff had "insulin controlled diabetes" (Tr. 389-90), and subsequent

evaluations from other doctors indicated that Plaintiff's diabetes was "stable on diet and

medication" (Tr. 398-99), and that Plaintiff's blood sugar was "better controlled" (Tr. 493).[9]   The

ALJ correctly pointed out that no record medical evidence provided substantial evidence to

support Plaintiff's allegations with respect to the intensity, persistence, and limiting effects of his

diabetic symptoms, simply by indicating Plaintiff's subjective complaints of diabetes.  (Tr. 26-28);

*see McCruter*, 791 F.2d at 1547 (stating that disability is measured by the ability to work, not only

that a severe impairment exists).[10]   Thus, the ALJ findings are supported by substantial evidence.

   Plaintiff also contends that the ALJ erred by not finding Plaintiff's complaints of

neuropathy credible.  (Dkt. No. 16, 17.)   Plaintiff notes that "neuropathy would ordinarily be

_____

   [9]To the extent that Plaintiff argues that the ALJ erred by citing an evaluation by a podiatrist regarding Plaintiff's diabetes (Dkt. No. 16, 17), the Court is satisfied that the ALJ did not limit his RFC evaluation to this one doctor in reaching his decision.  In fact, the ALJ considered evaluations from several doctors, not just the podiatrist, in formulating Plaintiff's RFC with respect to Plaintiff's diabetes (Tr. 26-28).  As stated above, there is substantial evidence in the record to support the ALJ's finding that Plaintiff's diabetes was not as limiting as he alleged.

   [10]Although Plaintiff fails to specifically argue how the ALJ erred with respect to Plaintiff's hypertension complaints, the Court notes that for similar reasons as attributed to Plaintiff's diabetic complaints, this arguments fails, as well.  There are several places in the record indicating, and which the ALJ considered, that Plaintiff's hypertension was "controlled" (Tr. 485, 489-90), and there was never a diagnosis of heart disease resulting from Plaintiff's complaints (Tr. 443, 466, 473-78).  Therefore, there is substantial evidence in the record to support the ALJ's finding that Plaintiff's complaints regarding hypertension were not credible and not as severe as alleged.

15

treated conservatively" and "[s]urgery is not a normally recommended" treatment for neuropathy.[11]

(Dkt. No. 16, 17.)  Plaintiff further alleges that the ALJ erred by substituting his own opinion for

the opinion of a physician in determining Plaintiff's credibility regarding his neuropathy

complaints.  (Dkt. No 16, 17-18.)  However, the ALJ did not substitute his own opinion for that

of a physician; the ALJ relied on medical records in making his decision and did not mention that

lack of surgery for neuropathy was the reason for said decision.  Instead, although the ALJ

acknowledged that Plaintiff's neuropathy was a severe impairment (Tr. 23), the ALJ also noted

that Plaintiff's medication for neuropathy was helping, as was the assistance of a cane (Tr. 26,

372-73, 397-400, 389-90).  In particular, in the same report that Plaintiff requested a new

neuropathy medication, neurontin, the same report indicated and the ALJ discussed, that Plaintiff

reported "feeling good." (Tr. 376-77.)  The ALJ also discussed that while Plaintiff had diminished

pulses in his feet, Plaintiff's other pedal pulses were normal and no active treatment was

recommended.  (Tr. 26, 389-90.)  Furthermore, the ALJ highlighted that a consultative examiner

stated that Plaintiff walked with a cane for stabilization, yet he: walked the same with or without

the cane; had no difficulty getting on or off the exam table and no difficulty rising from a chair;

and his neurologic exam was normal.  (Tr. 26, 397-400.)  Therefore, once again, the ALJ was

correct in pointing out that the medical evidence did not support Plaintiff's complaints of

---

[11]The Court notes that after reading the exhibit Plaintiff attached to its Memorandum related to research on neuropathy (Dkt. No. 16, 29), that while there is no cure for neuropathy, maintaining a healthy lifestyle can control the symptoms.  Specifically, eating a balanced diet can help (Dkt. No. 16, 29), some pain medications have proven helpful in managing the pain (Dkt. No. 16, 30), mechanical aids and walking devices can help (such as a cane in Plaintiff's case) (Dkt. No. 16, 30), and surgery can provide more immediate, albeit non-lasting, relief (Dkt. No. 16, 30).

neuropathy and like symptoms to the extent that he alleged, and so the ALJ correctly dismissed them.  (Tr. 26-28.)

Additionally, contrary to Plaintiff's argument, Plaintiff's self-reported activities with respect to household chores, fishing, and going to the grocery store and church are inconsistent with the level of pain that he is alleging.  An ALJ may consider a claimant's daily activities in discrediting a claimant's subjective complaints of pain.  *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).  Plaintiff argues that there are no reported activities that support the ALJ's finding that Plaintiff could stand and walk for six hours in an eight-hour workday.  (Dkt. No. 16, 18.)  While Plaintiff is correct in noting that Plaintiff testified to using a stool to shower and cook (Tr. 46, 49), the ALJ discussed these limitations (Tr. 27).  However, the ALJ pointed out that on Plaintiff's function report, Plaintiff reported that he was able to clean his room, do his own laundry, and do basic household chores. (Tr. 27.)  Additionally, the ALJ noted that Plaintiff fished, went to the library, went to the grocery store and church on a regular basis, and while incarcerated, Plaintiff testified to being on cleanup detail even though he had a no standing pass.  (Tr. 27, 44-49.)  The ALJ also included a limitation for a cane in his RFC determination, and appropriately posed a hypothetical to the VE at the hearing including this accommodation, to which the VE replied that jobs indeed existed that Plaintiff could perform.  (Tr. 51-53.)  Accordingly, Plaintiff's reported daily activities undermine his allegations of disabling limitations.

Thus, neither the medical records nor Plaintiff's activities support Plaintiff's contentions about his pain and limitations and finding that Plaintiff's claims were not entirely credible was

well within the realm of judging by the ALJ. *See Faber v. Astrue*, No. 5:08-cv-260-Oc-GRJ, 2009 WL 3158182, at *10 (M.D. Fla. Sept. 25, 2009) (affirming the ALJ's credibility finding because Plaintiff's allegations were inconsistent with her self-reported activities of daily living and the objective medical evidence of record).   While Plaintiff may argue that the record supports a contrary conclusion, it is "within the ALJ's discretion to determine, after listening to [Plaintiff's] testimony, that [her] claims of pain and other symptoms were not credible." *Holt*, 921 F.2d at 1223; *see also Adefemi*, 386 F.3d at 1027 (stating "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings").

Accordingly, the ALJ properly articulated his reasons for questioning Plaintiff's credibility, and his finding is supported by substantial evidence.   Consequently, Plaintiff's third argument is without merit.

> **D.      Whether the ALJ properly evaluated Plaintiff's non-examining physicians' opinions.**

In reaching his decision, the ALJ properly considered all medical records and opinions from the doctors that treated and examined Plaintiff.  (Tr. 26-28.)  Generally, when determining whether a claimant is disabled, more weight should be afforded to the opinions of a treating source as opposed to a non-treating source, because:

> ... these sources are likely to be the medical professionals most able
> to provide a detailed, longitudinal picture of your medical impairment(s)
> and may bring a unique perspective to the medical evidence that cannot
> be obtained from the objective medical findings alone or from reports of
> individual examinations, such as consultative examinations or brief
> hospitalizations.

*See* 20 C.F.R. § 404.1527(d).  In determining the weight to be afforded to medical opinions such

18

as opinions of a treating source, an ALJ shall consider the examining relationship, length of the treatment and frequency of the examination, nature and extent of the treatment relationship, supportability of a medical source, consistency of the opinions, specialization of the treating source, as well as certain "other factors." *See id*. Notwithstanding the Social Security Regulations, the ALJ is not required to explicitly address each of these enumerated factors. *Lawton v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 830, 833 (11th Cir. 2011). Rather, the ALJ must provide "good cause" for rejecting a treating physician's medical opinions. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Lewis,* 125 F.3d at 1440. Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004); *Lewis,* 125 F.3d at 1440. In fact, the ALJ may reject any opinion when it supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Further, this Circuit has held that a treating physician's opinion is not entitled to great weight if evidence of a claimant's daily activities contradicts the opinion. *Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. Appx. 869, 873 (11th Cir. 2011) (citing *Phillips*, 357 F.3d at 1241).

As a threshold matter, the ALJ properly afforded little weight to treating source Dr. Saad's opinion. Although as a treating source, Dr. Saad's opinion should have been given greater weight, the ALJ properly gave the opinion little weight because good cause existed to reject such an opinion. The ALJ showed that good cause existed to reject Dr. Saad's opinion because the evidence of record supported a contrary finding, including Plaintiff's testimony regarding his daily

activities. (Tr. 26-28.) Specifically, no diagnostic testing or medical records indicate that Plaintiff suffered from heart disease as previously discussed, and nothing in the record supports a finding restricting Plaintiff from activities that require mild or greater exertion because of cardiac disease.[12] Therefore, substantial evidence supports the ALJ's decision to give Dr. Saad's opinion little weight, and to consequently afford greater weight to two non-examining sources' opinions, which were consistent with the record as a whole.[13]

The ALJ was correct in giving greater weight to two non-examining physicians' opinions, Dr. Kline and Dr. Ravipati, in determining Plaintiff's RFC. According to the Social Security Regulations, "[f]indings of fact made by State agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources." S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). In addition, state agency medical physicians' opinions may be entitled to greater weight than the opinions of treating or examining sources. *Id.* at *3. The weight afforded to state agency medical physicians' opinions varies, depending on the extent to which the findings are "supported by clinical findings and [are] consistent with other evidence." *Jarrett*, 422 Fed. Appx. at 873 (citing 20 C.F.R. § 404.1527(d)(3)-(4); *Crawford*, 363 F.3d at 1158, 1160). "[W]here a non-examining

---

[12]Particularly of note, "[t]he ALJ's RFC need not be identical to a particular assessment of record or incorporate the precise limitations set forth by a physician." *See* 20 C.F.R. § 404.1545(a)(3) (stating that the ALJ must base the RFC on *all* of the relevant medical and other evidence). Here, the ALJ was under no legal obligation to adopt Dr. Saad's conclusions verbatim, or at all. Rather, he was required to evaluate this opinion with the rest of the evidence of record, which he did. (Tr. 26-28.)

[13]It is, after all, the duty of the ALJ to weigh all of the evidence and resolve any inconsistencies in the record. *See* 20 C.F.R. 404.1527(c)(2).

physician's assessment does not contradict the examining physician's report, the ALJ does not err in relying on the non-examining physician's report." *Jarrett*, 422 Fed. Appx. at 873 (citing *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Although Plaintiff argues that the non-examining physicians' opinions are not well supported by the record because the physicians did not discuss Plaintiff's renal failure and spent more time discussing congestive heart failure rather than Plaintiff's diabetic neuropathy (Dkt. No. 16, 18), this argument is unpersuasive. Both physicians reviewed the record and concluded similarly that Plaintiff could occasionally lift fifty pounds, could frequently lift twenty-five pounds, could stand or walk for six hours in an eight-hour workday, and could sit for six hours in an eight-hour workday. (Tr. 418-25, 465-72.) These findings are consistent with other medical records as discussed, *supra*, which indicate that Plaintiff reported feeling well and his symptoms were managed with medication and a proper diet. (Tr. 376-77, 389-90, 397-400, 446, 489-90, 492-94.) Further, Plaintiff's own testimony regarding his activities is consistent with the non-examining physicians' findings, as well; namely, that Plaintiff was not as limited as he alleged. As the ALJ discussed, Plaintiff testified to engaging in several activities such as fishing, going to the grocery store, attending church, and doing some basic household chores. (Tr. 27.) What's more, the ALJ did not limit his findings solely to the reports of the two non-examining sources; the ALJ found that Plaintiff suffered from "some limitation due to neuropathy." (Tr. 27.) The ALJ therefore found, as consistent with the record as a whole, that Plaintiff was further limited and required the use of a cane. (Tr. 28.) The ALJ incorporated this limitation into his RFC finding, took into account all evidence of record, including the two non-examining sources, and properly

21

reached his decision based on substantial evidence.   Therefore, Plaintiff's fourth argument is without merit.

> ### E.    Whether the ALJ properly and fully developed the record.

Lastly, Plaintiff argues that the ALJ failed to fulfill his duty to fully and adequately develop the record by failing to inquire further about Plaintiff's limitations and by failing to make an attempt to help Plaintiff understand the VE's testimony.  (Dkt. No. 16, 19.)  Plaintiff contends that the ALJ never: asked for a reason for Plaintiff's termination as a groundskeeper; or asked Plaintiff how far he could walk, how long he could stand, how much weight he could lift, and how often and for what purposes he used his cane.  (Dkt. No. 16, 19.)  As an unrepresented party at the hearing who stated he did not understand something, Plaintiff argues that the ALJ should have made an attempt to explain the proceedings or make a more detailed inquiry into the issues.  (Dkt. No. 16, 19-20.)  Rendering a decision in this case without doing so, Plaintiff alleges, illustrates that the ALJ did not fulfill his duty.  (Dkt. No. 16, 19-20.)

It is well-established that the ALJ has a basic duty to develop a full and fair record.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)).   Where a claimant's representation by counsel has not been waived, the ALJ's obligation to develop a full and fair record rises to a special duty.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (internal citations omitted).  By implication, where counsel has been waived, the special duty to develop the record does not take effect.  *Robinson v. Astrue*, 235 Fed. Appx. 725, 727 (11th Cir. 2007).   This special duty requires, essentially, a record showing that the claimant was not prejudiced by the lack of counsel.  *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982) (citing

*Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).  In examining whether a claimant was prejudiced by lack of counsel, a reviewing court must ensure that the ALJ "scrupulously and conscientiously probe[d] into, inquire[d] of, and explore[d] for all the relevant facts."  *Smith*, 677 F.2d at 829 (citing *Cowart*, 662 F.2d at 735).  The Eleventh Circuit has commented on the difference in the two standards as follows:

> These two standards appear to differ only in degree.  Both require that the ALJ fully develop the record.  Both require a showing of prejudice to necessitate a remand to the [Commissioner] for reconsideration.  The only discernible difference is that a more specific showing of prejudice is required if [a] claimant did not waive his right to counsel.

*Scott v. Astrue*, No. 3:08-cv-1075-J-JRK, 2010 WL 3893685, at *10 (M.D. Fla. Sept. 30, 2010) (quoting *Kelley v. Heckler*, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985)).  Under the special duty standard, the Court is not required to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ.  *Clark v. Scweiker*, 652 F.2d 399, 404 (5th Cir. 1981).  Notwithstanding the ALJ's duty, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."  *Ellison*, 355 F.3d at 1276 (citing 20 C.F.R § 416.912(a); 20 C.F.R. § 416.912(c)).  Moreover, remand of the case is not appropriate unless Plaintiff can show that the ALJ's failure to fully and adequately develop the record resulted in prejudice.  *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).  This requires a showing that the ALJ lacked all relevant evidence or that the ALJ did not consider all of the evidence in the record when reaching his decision.  *Kelley*, 761 F.2d at 1540.  In other words, Plaintiff must demonstrate that relevant evidence exists and that such evidence would have changed the outcome of the case.

A claimant has a statutory right to have counsel represent him or her at the hearing if desired. *Holland v. Heckler*, 764 F.2d 1558, 1562 (11th Cir. 1985).  The Commissioner has a duty to notify the claimant of the right prior to the hearing.  *Cowart*, 662 F.2d at 734.  This notice must inform the claimant of both the possibility of obtaining free counsel and the limitation on the recovery of attorney's fees.  *Smith*, 677 F.2d at 829.  A claimant may waive his right to counsel, provided the waiver is made knowingly and intelligently.  *Id.* at 828.  If such a waiver is made, the ALJ is not subject to a special duty to assist the claimant.  *See Graham*, 129 F.3d at 1423.  In the present case, Plaintiff received notice of his right to have counsel represent him at the hearing. (Tr. 65-68, 71.)  Plaintiff received notice of his right to representation at the hearing in the Reconsideration Notice dated September 3, 2008, and in the Request for Hearing Acknowledgment Letter dated January 29, 2009.  (Tr. 65-68, 71.)  At the Hearing, Plaintiff acknowledged that he was informed of his right to representation and waived his right voluntarily. (Tr. 37.)  Because this was an effective waiver of counsel, the ALJ's obligation to develop a full and fair record did not rise to a special duty in this case.  Therefore, the ALJ erred only if Plaintiff can show prejudice by his lack of counsel at the Hearing.

Even assuming *arguendo* that the ALJ did not fulfill his duty to develop a full and fair record, remand is only warranted when the Plaintiff has made the requisite showing of prejudice, which Plaintiff has not done here.  *Kelley*, 761 F.2d at 1540.  Although Plaintiff contends that the ALJ should have inquired further into certain limitations and should have explained the VE's testimony more explicitly, Plaintiff has not carried his burden of illustrating to the Court how the absence of this evidence precluded the ALJ from making an informed decision or how Plaintiff

was harmed by a lack of explanation of the VE's testimony.[14]  (Dkt. No. 16, 19-20.)  As previously

stated, "there must be a showing of prejudice before it is found that the claimant's right to due

process has been violated to such a degree that the case must be remanded . . . for further

development of the record."  *Graham*, 129 F.3d at 1423.  This requires a showing that the ALJ did

not have all of the *relevant* evidence before him in the record or that the ALJ did not consider all

of the evidence in the record reaching his decision.  *Newberger v. Astrue*, No. 3:07-cv-585-J-HTS,

2008 WL 299012, at *3 (M.D. Fla. Feb. 1, 2008) (quoting *Blanks v. Apfel*, No. Civ.A. 00-0004-

RV-S, 2001 WL 228178, at *4 (S.D. Fla. Feb. 23, 2001)).  Here, Plaintiff has not demonstrated

how additional evidence would have changed the outcome in this case.  *Edwards v. Sullivan*, 937

F.2d 580, 586 (11th Cir. 1991).  Plaintiff has not proven that additional elicited testimony would

result in support for his claims.  To reiterate, Plaintiff's subjective complaints of pain and other

symptoms were not supported by the evidence of record.  Consequently, any additional testimony

that Plaintiff could have given the ALJ would suffer from the same infirmities as his other

subjective complaints.  Additionally, the ALJ considered all of the record evidence and substantial

evidence supports the ALJ's finding that Plaintiff could perform less than medium exertional

work.  As a result, Plaintiff failed to show that he was prejudiced by the ALJ's conduct at the

hearing.  Accordingly, Plaintiff's fifth argument is without merit.

## IV.

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that:

---

[14]The Court notes that the ALJ even asked Plaintiff after the VE's testimony, after
Plaintiff stated that he didn't understand the VE's testimony, if Plaintiff had a question for the
VE or for the ALJ himself.  (Tr. 54.)  But Plaintiff did not ask any questions.  (Tr. 54.)

1)      The decision of the Commissioner be **AFFIRMED**; and

2)      The Clerk of Court be directed to enter final judgment in favor of the

Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on this 7th day of February, 2013.

ANTHONY E. PORCELLI
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date it is served on the parties shall bar

an aggrieved party from a *de novo* determination by the District Court of issues covered in the

report, and shall bar the party from attacking on appeal factual findings in the report accepted or

adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.

28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982)

*(en banc).*

Copies furnished to:

Hon. Mary S. Scriven
Counsel of Record

26